Good morning, everyone. We just have one case on the docket this morning. The remainder of the cases have previously been submitted on the briefs, so we'll take up U.S. v. Torres. Good morning. Kara Hartzler, Federal Defenders, on behalf of Mr. Torres. When Mr. Torres was walking away from his aunt's unlawfully parked car on Chicano Park Day, police did not have reasonable suspicion to stop or to frisk him. But at a minimum, the district court should have held an evidentiary hearing to resolve the disputed facts. So let's start with whether there was reasonable suspicion for the stop. When police stopped Mr. Torres, he was walking across the street. So he was not a passenger. He was a pedestrian. So you define the stop as starting several seconds into what's portrayed on the video. So isn't the stop when the officer stopped their vehicle and got out to investigate the car? Well, first of all, the officers didn't stop this vehicle. This was not a traffic stop where the officers pulled the vehicle over. Sure. I mean, we've all watched the video probably several times since it's only a few seconds long. But there is a car parked illegally. I can't tell from the audio whether the engine is running. It very well could be. It's several feet from the curb. It's basically in the lane of traffic at a red curb. The door is open. The light's on. You could call it a parking violation. You could call it a traffic violation. But either way, I think there's reasonable suspicion in those circumstances for an investigatory stop. Would we don't doubt that there was reasonable suspicion that the car was unlawfully parked and they could issue a ticket for that? Well, they could stop. They could get out and say, hey, what's going on? They could stop the driver of the car. Well, there's three people standing next to the car. And they get out and say exactly the first thing the officer said is, whose car is that? And then he says, is that yours or yours? And then he tells them, you guys aren't in a parking spot. It's a red zone. You're hanging out in the street, all kinds of stuff going on. Turns to Mr. Torres and says, no weapons on your partner? He says, no, sir. And then, boom, Mr. Torres takes off running. That all elapsed in 18 seconds. So you're parsing it pretty finely to say, well, I'm not really sure when you say the stop occurred. You agree they could have an investigatory stop because of the circumstances with the vehicle in the lane of traffic. But you're saying, we have to parse this out and say they couldn't say to Mr. Torres, you have weapons or stop? Yes. First of all, Your Honor, I think there is a disputed fact as to whether Mr. Torres was standing by the car when police pulled up or whether he was crossing the street. The officers say he was standing by the car. His declaration says he was crossing the street. So at a minimum, we've got a disputed issue of fact that shouldn't be resolved. Can't we resolve? I mean, under Scott v. Harris, courts are entitled to review the video, right? And we can, and we all have. The district court did as well. So we can see him walking away from the car, next to the car, walking away from the car. But again, we're talking about a matter of seconds. This is not a 15-minute stop, even a one-minute stop, as this is unfolding. So I guess what I'm trying to get you to define is how you're parsing this stop, that there's no reasonable suspicion, that they had reasonable suspicion to initiate this investigatory stop. But then you're saying they lost reasonable suspicion at, like, second three or four? I'm saying they never had reasonable suspicion to stop Mr. Torres. They had reasonable suspicion to issue Annabelle a parking ticket. But I'll quote from Williams. And what Williams says is, in that case, the person was still in the car. So this court found that it was acceptable when the person had gotten out of the car after the stop to tell them to come back and get back in the car. But, Williams says, when Williams attempted to exit the vehicle, the automobile had already been lawfully stopped with him inside. The officer's order to get back into the vehicle merely maintained the status quo by returning the passenger to his original position. Here, the time of the stop was when Mr. Torres was outside of the car. So the officer said that they didn't know who was driving. There's three people standing outside the car. The doors opened. The lights were on. And when they were trailing the vehicle, they couldn't determine who was driving. That doesn't seem to be disputed. So they say, whose car is that? Is that yours or yours? They're asking the three people standing outside the vehicle, who's driving this? You're saying they could only detain the driver. They don't know who the driver was. Well, that's another issue that should have been resolved through an evidentiary hearing, because it was not reasonable for the officers to think that anyone other than Annabelle was the driver. Well, it was not reasonable for them to ask, whose car is this? Well, at the moment that we start seeing the video, we see clearly, and this is on ER 96 of the record, basically, we see Annabelle standing in the open car door. We see the other two gentlemen on either side. The officers at this point ask, whose car is this? Everyone says it's Annabelle's car. Then she says, I'll move it. And by this point, the officers had certainly already run the plate. So they knew it was registered to her. So they're standing here talking to them. Whose car is this? Is it yours? Is it yours? She says, it's mine. He says, it's not in the parking spot. They're having this discussion. And I think the assumption is, oh, they should have just written a ticket and left it. But isn't it reasonable for them to try to solve the situation and be like, hey, move the car? They also had information from the other officer about who they suspected these individuals were. So the officer asks, are you armed? Do you have weapons? I think he says exactly, no weapons on you, partner, question mark. And then the tourist says, no, sir. So you think it's unreasonable to ask if he had weapons? Yes, because at that point, there was no reason to detain him. At this point, even assuming that the officers didn't know. Well, if they hadn't decided to arrest him or detain him, but they're still investigating, isn't it clear under our case law that they have a right to protect themselves and the public? And to ask somebody, do you have weapons on you, seems pretty reasonable. To the extent that they were trying to frisk, this was a situation of the officer's own making. If they had, and in the Landeros, this court said that basically when the officers prolong the stop, it's basically inversely proportionate to the... Well, you recognize it was 18 seconds total, right? And on page 13 of our brief, we talk about at least three cases where this court has said that 30 seconds or less can be an intrusion on a person's... Let me ask you this. When did the stop occur? The stop occurred when Officer Wilson twice told all three of them to stop and then say, hey, stop. And at that point, Mr. Torres was crossing the street. Okay. Now, I'm trying to understand what the sensible resolution of this is. So the district court said that the court considers the totality of the circumstances surrounding the stop and the investigation that ensued. We don't disagree with that. No, we do think there should have been an evidentiary hearing. No, but this court is saying the standard. We evaluate the totality. The court says the law enforcement officers here had probable cause to stop the apparent passengers of the vehicle. Now, you disagree with that? I disagree because he was not a passenger at the time of the stop. He was a pedestrian. He was an apparent passenger, says the district court, not he was an apparent passenger. If he were right next to the car and still open, closing the door having gotten out, he would be an apparent passenger, right? We might be in a different situation. I do want to save a couple minutes for rebuttal, but yes, I agree. We might be in a... I'll give you time to answer. Okay. Thank you. I know we don't have many other people today. So as a practical matter, following up with what Judge Schroeder was asking, there were four counts, right? And he pled guilty to all four and reserved the right to appeal in this particular count. The other three were on different dates, and there's no issue with suppression of evidence with respect to the other three conditions. The sentencing options were the same for each count. They all involved an unlawful possessor with a firearm, and the sentences were concurrent, right? So what you're asking us to do is remand it for the district court to have an evidentiary hearing on one of the four counts. Right, because we wouldn't have pleaded guilty if we hadn't gotten this conditional plea, and things might have gone very different, all of those other counts, if we hadn't had the ability to... Was there any challenge? Did you make any challenge to the other counts? Not below... Or on this appeal? I didn't see anything challenging his convictions on the other three counts. No, but we would not have necessarily done the same thing if we hadn't been given this conditional plea and had the right to appeal. So at a minimum, Your Honor, we would say that there should have been an evidentiary hearing because there were many disputed issues of fact, and the district court shouldn't have resolved those without holding an evidentiary hearing. And if the court has no further questions at this time, I'll reserve a little bit of my time. Okay, thank you. May it please the court, Siddharth Dutch from the United States. This case involves the application of long-standing circuit precedent to an ongoing traffic violation, and the factual findings that generates reasonable suspicion are entitled to review on a clear error standard. The district court got it right. The district court bifurcated the stop. Why was the district court... Why are we in a better... Not in as good a position as the district court to evaluate this record? Well, Your Honor, one answer is this is what district courts do, right? They get declarations, they can hold hearings, they can do all this stuff. And I think this goes to the question of whether an evidentiary hearing was necessary in this case. And to that point, you had two declarations that said that the driver of the vehicle was unknown. You had a video that supported that based on the first question that was asked was, you know, whose car is this? This was actually never an issue raised in the papers, whether Detective Euler knew the driver of the vehicle, that was not a question. The argument was that the government was going to say that the driver was actually Mr. Torres. All the facts said Euler didn't know it, Detective Short didn't know it, and the video made clear that they didn't know it. So these sort of credibility determinations can be made based on... But she didn't make a credibility determination. She just had declarations, she never evaluated the credibility. And for the record, she did not include anything from Shorter's declaration in her basis for probable cause. So what we have to review is what she gave as probable cause. And I'm just wondering, like, where's the line? Like, how far do you have to get away from the illegally parked vehicle before there's no more reasonable suspicion to stop somebody just because they're an apparent passenger? Your Honor, I think in this case, that line, wherever that line is, it's hard to draw here because you had an ongoing parking violation with the doors of the vehicle open, and they were pretty close to the vehicle. The door, from the pictures I've seen, the door of the vehicle was open, but Annabelle, is that her name? Annabelle Vargas, yes. Annabelle was in the driver's seat getting out when the door was open. She's, like, right there. So the person who's responsible for illegally parking is standing right in front of you. Why are you asking other people to stop? What's the reasonable suspicion to ask the people who are crossing the street to stop? Well, the reasonable suspicion there is that you don't know who the driver is, right? You had two declarations that matched that. Annabelle is standing right next to the door, Your Honor, but the door is open. The car is parked illegally. Mr. Torres immediately begins walking away, as Oz Officer approached, which would add to the potential that he is a driver. But what's he suspected of? Illegally parking the vehicle, but he was clearly not in the driver's seat. Because the vehicle is parked and Annabelle was outside the car. She was getting out. She's, like, in the front door. It's still unknown who had parked the vehicle. It's still unknown who the driver was. That is not a fact that has been contested in terms of Detective Mueller's knowledge. Maybe that's why there should have been an evidentiary hearing. Well, in terms of an evidentiary hearing, to test the credibility of the officers, because this district court judge did not use the collective knowledge doctrine at all to incorporate Shorter's knowledge into the analysis of reasonable suspicion, so we just have to go. Can I finish my question? Sure. I mean, yesterday you did this to me, too. I don't understand it. So, it seems like you have to go to Shorter's declaration to fill in some of these facts, but the district court judge did not do that in her decision making. I think the government's position is that the district court didn't have to do that. Looking to Detective Shorter's declaration, if this court on de novo review of the initial stop or the reasonable suspicion investigatory frisk wants to do that, you know, that's something the that would play into why an investigatory frisk was appropriate, but I think, you know, the initial stop is justified by that traffic violation. It's not a complete erroneous finding a fact that Mr. Torres couldn't have been the driver, especially considering that Detective Mueller didn't know who the driver was, Detective Short didn't know who the driver was, and the first question that was asked was, whose vehicle is this? So, it is clear from the record that that was an open question, and that's what the district court said, that, look, you could investigate this. In terms of the evidentiary hearing, I do want to point out in the moving papers, these had to be specifically identified, it was never contested whether Detective Mueller knew who the driver was. This is an argument for the first time that's raised on appeal, and to reverse on abusive discretion standard for that position, I think, goes against what the standard is. This is, you know... Wait, this isn't abusive discretion. For the evidentiary hearing, Your Honor, I apologize. Oh, okay. Yeah. And going to credibility, yes, there was no cross-examination, but, you know, you can imagine what that cross-examination would look like of Detective Mueller. Did you know who the driver was? No. That was in my declaration. By the way, there's Detective Short's declaration. By the way, my first question was, who owns this vehicle? So, there's no competing factual dispute there, and it's only on appeal that that's been raised. Can I... I'm sorry, can I ask you? Yes, Your Honor. In the District Court, you asserted collective knowledge, is that correct? That's correct, Your Honor. And you asserted it again here on appeal? That's right, Your Honor. And our long-standing circuit precedent is that we can affirm on any basis in the record? That's correct, Your Honor. Okay. And I re-read defendants' briefing again last night to see if I could discern their position on this issue, and what I heard them, understood them to read, to argue is that the collective knowledge wasn't sufficient, but not that collective knowledge was not a doctrine that exists and that is applied in our case law. Yes, Your Honor. I think one of the arguments, maybe the lower court on appeal, was that there wasn't a particular order from Detective Short that justified the application of collective knowledge, but never that the collective knowledge doctrine is not a thing. Well, what is a red zone? What does that mean? It is, from my understanding, and I recently got a parking ticket in a red zone, is that it's a zone you just can't park in for whatever reason, maybe an emergency loading zone. It could be a zone that at certain times of day, you know, law enforcement has to park in. It's just a zone you cannot park in, and I think the fact that that's like a bread and butter public safety thing. It's an ongoing traffic violation, and that's how I understand it. Yeah, that kind of makes a difference here, doesn't it? If this were just a parking meter and they were leaving the car with an expired parking meter, we wouldn't be here, I guess. I think it's a huge difference. I think the goal of officers in that situation, as I myself experienced, is to get the car to move, right? It's in a zone it shouldn't be parked in. You're admitting you parked in a red zone intentionally? By accident, because it became one later. Yeah, it became one later. Okay, thank you. How would your argument differ if they were still in the car? I think it would be different. I think that the factual finding that Detective Euler didn't know who the driver was, had the opportunity to investigate that, makes this a different case. That is a strong circumstance. It justifies the initial stop. I think you'd really have to lean on that collective knowledge doctrine to justify stopping the vehicle, but then it gets a little fuzzier. You know, just because of gang affiliation, just because of that fact, leaving the party, I'm not sure you would have the same basis. What was the knowledge that Shorter had that you're incorporating via the collective knowledge doctrine? Detective Short's knowledge, which again, I think this could be affirmed without the collective knowledge doctrine, but Detective Short's knowledge was knowledge of Mr. Torres's background. He knew that Mr. Torres was a member of the Logan Heights gang. He knew about Mr. Torres's criminal history from arrests. And how did he know it was Torres in the car? He made an inference based on the direction that Torres was walking and his build, that the individual that got in the car was actually Torres. He did not know whether Torres was driving either, but that's the inference that he made. So they were all out of the car and the car was in a red zone, and they were apparently leaving the car. They were all out of the car, the car was parked in the red zone, yes. So this is why I think this is important, is what I really have to go back to, what's the limiting principle? Is it because, and where do you draw the line on people who are out of the car? I would draw the line if Mr. Torres was across the street, had not moved away instantly, had not had an association with Mr. Jaime Diaz based on the gang identification that Detective Euler had experience and training to recognize. I think you could draw so many lines there. It's just hard. What's the line, if we go your way on this case, what's the limiting principle? The limiting principle is if you don't have the robust factors here, kind of like the Navarro case. There's another case that Judge Schroeder, you were on, Luckett, that have similar overlapping factors. If you don't have these robust factors, you can draw the line. If they pull up and Mr. Torres is across the street, right, is not moving, has no association with the passengers who are, or the individuals who could be drivers, but outside the vehicle, then you can draw that line. That line here is pretty obvious. It's the association with the car. It's unlawfully parked in a zone that it's not, where they're not supposed to park. Immediately moving away from that. Leaving the car. So in a sense it would be a weaker case for you if they tried to frisk somebody who was still in the car. I think so. I think based on some of these factors, yes. Okay. Court has any further questions? I don't think so. Thank you. Thank you, Your Honor. I'd like to go to this idea of what's the limiting principle, because that seems to be at the heart of this case. And I'd like to go back to both the Supreme Court's decision in Willis and this court's case law, which says that drivers have a liberty interest, and you have to weigh that against the public safety, or the public interest. Then it says that passengers have a greater liberty interest than the driver, because they're all not generally going to be associated with whatever the driver did wrong. I think that this court should hold that passengers who are not in the car have an even greater liberty interest. I'm sorry, pedestrians who have already left the car have an even greater liberty interest than the passenger, because here, for instance, they're already on their way to their destination. So there should be an even greater weighing of the personal liberty interest at stake for a person who is not in the car at the time that the stop occurred. So if they were still in the car? If they were still in the car, I think we would be in a weaker position. Williams would probably apply, because that's where this court said that if someone is in the car at the time it stopped, and then they get out, you can order them to get back in the car. But here, we don't have that. We have a situation where the stop did not occur until after Mr. Torres was halfway across the street. And unless there is a limiting principle, you're going to have a situation where, how far away can they get when cops stop them? Can they be down the block? Can they be a mile away? Those are the types of situations that this court should use to hold that the passenger has to still be in the car. Does it matter that they, it appears from this video, they were in the car? Do you agree it appears they were at least passengers in the car? I agree there were passengers in the car, not at the time of the stop. So when we, what we see from the body cam is what the officers are seeing as they approach. The doors open, the young woman and another gentleman are standing right there, and Mr. Torres is walking a few feet away. So they say, whose car is this? Is it yours? Is it yours? And you're saying from that, they, that's not, they're too far away, they can't ask whose car is this? I, I think that he is too far away, but let's, let's say that there was even reasonable suspicion to ask whose car it was. At the moment that the cops see, she is standing right in the doorway, they ask, whose car is this? Everyone says it's hers. She says, I'm going to move it. There was no basis to pursue the stop, ask to Mr. Torres. So they have to, in your view, accept her statement. They have to accept what the people are saying. They can't investigate. I think that's another question that is subject to an evidentiary hearing. Did the cops reasonably believe that anyone else was the driver besides her? And that's the kind of thing that should be subject to a credibility determination and cross-examination. So I think the government is asking or basically saying, well, nobody contested. It's never been contested that Officer Euler didn't know, but Officer Euler is a witness like any others. And that witness before their declarations and their statements should just be accepted wholeheartedly. They need to be subject to cross-examination. They should be subject to credibility determinations. And we can't just take, take it at will. What do we do with the video? Because aside from declarations, there's video from two angles, and it's, there's audio on it as well. So district courts seem to conclude that based on the video, there were no disputed facts that would require a hearing for her to suss out, you know, who do I believe in this? At a minimum, there were disputed facts as to not only who was, did he reasonably believe that the driver was Annabelle versus one of the other two? There were disputed facts as to the nature of Chicano Park Day, whether it was a gang holiday, whether his clothes were baggy, whether they could see his hands. So clothes baggy, you can see his hands, that's all in video. And the nature of Chicano Park Day, the district court didn't rely on that. But what does it matter in those moments when they're trying to do an investigatory stop? The district court did rely on it. So I'm looking at ER 7. And the very first factor that the district court cites is it says, on that day, Detective Euler was assigned to the gang suppression team. He had worked on this day for the last 10 years and has witnessed large gang gatherings where many gang members are armed with weapons on that day. She relied on it. Right. So she's relying on his experience in his affidavit, his declaration about this is what he's experienced, which is not to say this is a gang holiday. He's saying, I've worked at this on this occasion for a number of years, and this is what I've encountered. Which is not disputed. I mean, who is going to, are you going to present testimony to dispute or cross-examine him as to whether he's actually worked on this for 10 years and had this experience? Well, I think the district court relied on his characterizations of Chicano Park Day. And I think it was just as credible for us to say, here's an expert that says that actually Chicano Park Day is a gang truce day. And so there's not violent things that happen there. In fact, in the last three years, there haven't been any arrests in Chicano Park Day. We can't just have the district court accept his experience without being able to counter it with our own evidence. That's exactly what the district court did, and it was not the correct thing to do. Can I ask you about the collective knowledge doctrine? So the government raised it before the district court. The district court didn't rely on it. They raised it here on appeal. Your brief touches on it. It seemed to me you were arguing that even if you considered collective knowledge wasn't sufficient, but that you were not disputing that it is, in fact, a doctrine of law that applies in our circuit. We don't dispute it's a doctrine of law, but it doesn't matter here for two reasons. First of all, Detective Short lost sight of Mr. Torres. All he said was that he saw someone with a similar height and build get into a car on a day when there's tens of thousands of people milling around the streets. And then even if you assume that it was Mr. Torres and Detective Short did have that knowledge, all that knowledge went to was his prior criminal history and his alleged gang membership, which didn't have anything to do with the stop. It only had anything to do with the frisk. So at most, it said, well, there was, you know, he was a dangerous person. You could frisk, but that wouldn't go towards whether there was reasonable suspicion. No, I would totally agree with you if they stopped the car while it was driving along on the basis of some kind of apparent gang activity with the hat and everything. But that isn't what happened. He wasn't stopped until he was leaving a car that was parked in a red zone. And that's what the district court, I thought, was relying on. I agree. I think the district court did rely on the unlawful parking, but there was no question. Because that's what was being investigated. Right. There was no question that Annabelle was the driver and the owner. Even if there was a question, it was quickly dispelled. And for either reason, there was no basis to either stop Mr. Torres initially or to continue to detain him once it became clear that he was not the driver. I have one question for you. What is the practical consequence of if this fourth conviction, the evidence were suppressed and this fourth conviction didn't stand to your client? So essentially, I think what would happen is if this were suppressed, this would go back. The government could charge Mr. Torres again for the previous charges against him. I think a lot of the evidence in those cases is probably stale. I don't know whether they would be able to pursue it or not. But that's a question that we would deal with on remand. I don't necessarily think it's something that should control the outcome of the suppression. Oh, no. I'm just curious. I think we'd go back and we'd try to figure out whether it's something that they can go forward with on the other charges. Okay. Any other questions? Okay. All right. Thank you, Your Honor. Okay. U.S. v. Torres is submitted and the session of the court is adjourned for today. I'll rise.
judges: SCHROEDER, WARDLAW, BADE